## Northampton Mint Company v. Frederick et al.

*Equity—Injunction—Mint-vending machines—Gambling devices.*

An injunction will not be granted to restrain police officers from seizing ostensible vending machines which are in fact gambling devices.

Motion to continue preliminary injunction. C. P. Northampton Co., Sept. T., 1926, No. 2, in Equity.

*Fred E. Geiser,* for plaintiff.

*Robert E. James,* District Attorney, for defendants.

STOTZ, J., Sept. 13, 1926.—A preliminary injunction in the above case was granted upon bill and affidavits, with notice to the defendants. This was done not alone on the *prima facie* strength of the case as thus presented, but because in a substantially similar case (see Norman H. Missmer, trading as Radio Mint Co., *v.* Frank Frederick, Chief of Police of the City of Easton et al., July Term, 1926, No. 1) our brother McKeen had granted a temporary injunction, which was subsequently continued until final hearing, not after hearing and argument, but by agreement of counsel. As we understand it, the injunction was continued by agreement because both the court and counsel interested were then about to leave on vacation and not because of the merits of the case.

We are satisfied that in the instant case the preliminary injunction should not have been awarded and that it should now be dissolved. This, for two reasons: First, because the machines which the defendants have been restrained from seizing are in fact gambling devices, and are, therefore, entitled to no equitable protection; and, second, because the plaintiffs, if they are injured, have an adequate remedy at law.

We have examined these machines in person, and have heard and considered the testimony, as well as the arguments of counsel, with care. As a result, there is no question in our mind about the correctness of our conclusion that these machines are mere clever gambling devices. They are quite ingenious, both in conception and operation, and the exposition of their innocent *raison d'etre* given by the expert witness called by plaintiffs was plausible. But the stubborn fact stands out that the lure of the device is not the package of mint which the victim gets for his investment of a nickel, or more mint for additional nickels, but the uncertain chance which the machine offers of getting something more worth while. The same or better mints can be purchased over the county everywhere for the same price, and this complicated and expensive machine was not invented or intended primarily to stimulate their sale. The originator of it simply took advantage of, and built it around, the already existing fact that mints are a common, widely-used and cheap commodity. It appeals especially to the gullible young, who, according to Superintendent Halteman and Detective McGettigan, are the most numerous of the machine's customers.

Northampton Mint Company v. Frederick et al.

While mint, palatable withal, may not be harmful to the human system, especially when taken in the form and according to the innocent vogue which prevailed in the South prior to the present era of our moral development, it is difficult to comprehend the compelling urge for mint candy which this machine induces, and the· capacity to absorb it which the consumers must possess. Would the need for mint, which has grown so perceptibly throughout Northampton County since these machines have been installed, be as urgent if it were not for the little brass check which may, but generally does not, fall when the lever is pulled and the rotating discs come to a stop? We, at least, doubt it. The mint is merely incidental. The brass check is the thing. If it were not for the chance of the brass check, but only the certainty of the mint, there would be no machines. They pay only because they cater to the gambling instinct. It is because they are gambling devices and not merely mint-vending machines that the officers of the law have laid hands upon them.

And our judgment is not unsupported. In Buckley & Sheets v. Butler et al., 4 D. & C. 388, an injunction was sought, as here, to restrain the Director of Public Safety of Philadelphia, and police officers under him, from seizing and confiscating plaintiff's "mint-vending machines." The machine in that case was described by Judge Lewis, of the Municipal Court, as follows: "It is an instrument which, in size and shape, resembles an ordinary cash register. It is operated by a lever after the deposit of a nickel in the slot, which will cause the word 'No' or numerals, ranging from 2 to 20, to appear in a small window located directly in the centre of this device. If the word 'No' appears, the player receives only a package of mints. If any numeral appear, the player, by depositing another nickel, will receive, in addition to a package of mints, from another compartment in the machine, a number of slugs or discs equal to the number shown in the window. These slugs or discs are worth five cents in trade in the store where the machine is located."

This exactly describes the machine in our case. The injunction was refused. Said Judge Lewis further: "The device or machine might, at first glance, appear to be an innocent mint-vending machine, but, upon further reflection and examination, the conclusion becomes irresistible that it is a game of chance and 'determined entirely or in part by lot or mere luck, and in which judgment, practical skill or adroitness have honestly no office at all or are thwarted by chance:' 27 Corpus Juris, 968." His conclusion is fortified by the citation of a large number of cases from other states where the matter has been up for decision, and his opinion may be read with profit.

The case of Com. v. Hollands, 4 D. & C. 594, is also directly in point. In this case a motion in arrest of judgment and for a new trial was made following a conviction for a violation of the Gambling Act. See section 55 of the Act of March 31, 1860, P. L. 382. The motions were denied. In an able and exhaustive opinion, Judge Wickersham disposes of the case against the defendant. His description of the machine before him exactly fits the one here. A part of the syllabus reads as follows: "Nickel-in-the-slot machines are included among gambling devices. The generally accepted rule is that, where one playing a slot machine stands to win or lose money, trade or checks by hazard or chance, the machine is a gambling device. It is a gambling device where its operation is such that, although the player, in any event, will receive something, he stands a chance to win something in addition. If a device appears to comply with the letter of the law, but violates the spirit, it still must be held to be a gambling device. Wherever the element of chance enters into the operation of a nickel-in-the-slot machine, such machine is operated in violation of section 55 of the Act of March 31, 1860, P. L. 382."

Moreover, a direct remedy at law has been prescribed for a matter of this kind. See section 60 of the Act of March 31, 1860, P. L. 398; 1 Purdon, 961. It need not here be quoted or discussed. It speaks for itself.

Now, Sept. 13, 1926, the motion to continue the injunction is, therefore, denied, and the preliminary injunction heretofore granted is dissolved; the costs of the preliminary injunction and proceedings thereon to be paid by the plaintiffs. From Henry D. Maxwell, Easton, Pa.